## Commonwealth v. Goldstein

*Robert E. Gabriel,* for Commonwealth.

*John Patrick Walsh,* for defendant.

STOUT, J., August 30, 1968.—Melvin B. Goldstein, a Philadelphia attorney, was charged with the crimes of extortion, blackmail, solicitation of legal business by persons not members of the bar, and with con-

spiracy to commit each of those crimes. At the close of the Commonwealth's testimony a demurrer was sustained. The Commonwealth has appealed.

The evidence in its totality is as follows:

George Hubert of West Germany testified on May 15, 1968, that on April 15, 1963, he was arrested in the Family Theatre on Market Street in Philadelphia. After his arrest, he was lodged in the police station at 11th and Winter Streets. Soon thereafter a Mr. Nardello telephoned and asked if he wanted to be released overnight. When Mr. Hubert replied that he did, Mr. Nardello said he could get out for $20 which Mr. Hubert agreed to pay.

Some 50 minutes later a young man came with a car, picked Hubert up and took him to an office on Ranstead Street where he met Mr. Nardello. Mr. Nardello said that he wanted to help him so he would not have to go to court and that he knew someone who would fix the case. He said he also knew a lawyer. Mr. Nardello asked him to pay $1,000 to fix the case. Mr. Hubert said he wanted to think it over to which Mr. Nardello replied, "You want to think it over fast. You don't have time. I have to arrange it with people". Mr. Hubert said he could not pay that kind of money and that he would like to get the lawyer he had before, a Mr. Greenburg. To this suggestion, Mr. Nardello replied, "You better not. You were in trouble before. When you take that lawyer, you might go to jail. It is no good for you". Mr. Hubert consented. Mr. Nardello then said, "You pay $1,000 and you will be free and you don't have to go to court".

Mr. Hubert testified he first saw Mr. Goldstein, the appellee in this case, the following morning at a little restaurant across the street from the 11th and Winter Streets police station. He was with Mr. Nardello. Mr. Nardello said, "Here is your lawyer. He will fix everything for you. You don't have to worry about nothing".

Mr. Hubert said, on direct examination, that he had very little conversation with Mr. Goldstein who told him, "Don't worry. I will do the talking". On cross-examination, however, Mr. Hubert admitted that Mr. Goldstein did talk with him in preparation of his case. He asked him if he had ever been in trouble before. He told him he had been and that it was just about the same trouble he was in then. Mr. Goldstein asked him what the outcome of the previous case had been. He replied that he might have told Mr. Goldstein about being sent by the court to the psychiatrist. He said Mr. Goldstein asked him where he worked and he said he had worked at Horn and Hardart's. All of this Mr. Goldstein told the magistrate. Mr. Goldstein also told the magistrate that Mr. Hubert was from Germany, that his parents had died in a concentration camp, that he, Mr. Hubert, had come through a concentration camp, that he had been in this country 10 years, that he had had psychiatric treatment and would continue to go to a psychologist.

After Mr. Goldstein's eloquent plea, Mr. Hubert was discharged. He had no further conversation with Mr. Goldstein and did not see him again. Mr. Goldstein never spoke to him about a fee nor collected one.

After the hearing, Mr. Hubert went to the bank with Mr. Nardello and withdrew $1,000 and gave it to him. While they were in the bank, Mr. Nardello admonished him not to try anything funny or else he would get the police after him. When he gave Mr. Nardello the money, he asked for a receipt which Mr. Nardello refused to give saying: "Such a thing we don't give. I have to pay three or four people. I can't give you a receipt for that".

The supervisor of records of The Philadelphia Saving Fund Society testified that Mr. Hubert withdrew $1,000 on April 16, 1963.

An employe of the Prothonotary's Office testified that Melvin Goldstein is a practicing attorney in Philadelphia in good standing and that he had been admitted to the bar in 1957.

It was stipulated that Joseph F. Nardello was licensed as a bondsman by the Commonwealth of Pennsylvania from 1959 to 1966.

A criminal conspiracy is an agreement between two or more persons with criminal intent to do an unlawful act, or to do a lawful act by unlawful means. It depends on an agreement and the criminal intent of the parties to the agreement to commit an unlawful act, not on the acts that follow. The acts when done are but evidence against the accused when the conspiracy is established. They are immaterial and are not competent unless and until the agreement is established: Commonwealth v. Benz, 318 Pa. 465, 467, 468, 178 Atl. 391, 396 (1935).

Pared down to the evidence competent for consideration to establish a prima facie case of conspiracy against Goldstein, there is only the meeting of Nardello, Goldstein and Hubert across from the magistrate's court a short while before the hearing, and Nardello's statement to Hubert, in Goldstein's presence, that: "Here is your lawyer. He will fix everything for you. You don't have to worry about nothing". This was followed by Goldstein's effective representation for which there is no evidence that he was paid.

This evidence and the inferences reasonably drawn therefrom, viewed in the manner most favorable to the Commonwealth, would not support a verdict of guilty. For that reason, the demurrer had to be sustained.

Viewed even in an exaggerated manner, the evidence rises no higher than mere suspicion. A presumption of guilt could not be raised from the mere meeting of Nardello and Goldstein (see Commonwealth v. Neff,

407 Pa. 1 (1962)), nor from Goldstein's free representation of Hubert at Nardello's behest. There is no evidence that Goldstein's representation of Hubert was with knowledge of any criminal scheme: Dahly v. United States, 8th Cir., 50 F. 2d 37 (1931), cited with approval in Commonwealth v. Neff, supra, instructed that: "Even participation in the offense which is the object of the conspiracy does not necessarily prove the participant guilty of conspiracy. The evidence must convince that the defendant did something other than participate in the offense which is the object of the conspiracy. There must, in addition thereto, be proof of the unlawful agreement and participation therein, with knowledge of the agreement".*

Commonwealth v. Benz, supra, page 472, also taught that: "An unlawful combination, like any other substantive fact, must be established by sufficient evidence. Where it is direct and positive, the question of sufficiency is answered. The jury may then pass on the credibility of the witnesses. But, when a charge of crime is sought to be sustained by circumstantial evidence, the hypothesis of guilt should flow from the facts and circumstances proved, and be consistent with them all; . . . the facts and circumstances must not only be consistent with and point to the guilt of the accused, but they must be inconsistent with his innocence. . . . It is the duty of the trial judge, after

---

* See Harno, "Intent in Criminal Conspiracy," 89 U. of Pa. Law Rev. 624 (1941), at page 632, where the following example is given:

"Forbes and Roe are charged with a conspiracy to obtain money from Doe by means of false pretenses. The evidence shows that Forbes acted with bad intent, but that Roe, though he took part in the transaction, had no intent to defraud Doe. The prosecution has failed to prove Roe guilty of the conspiracy. It has failed to prove that he was a party to the agreement charged".

See also, Alvin H. Goldstein, Jr., "The Krulewitch Warning: Guilt by Association", 54 Georgetown L. Journal 133, at page 142, "Substantive Safeguards—Specific Intent".

the evidence of the Commonwealth has been fully produced, to determine as a matter of law whether the proof has been sufficient in volume and quality to overcome the presumption of innocence, and thus put the accused to a defense".

There was neither such quantity nor quality here. Goldstein's actions were consistent with the rendition of charitable legal services. In the circumstances, it would have been error to have allowed the jury to speculate or surmise on matters so ephemeral.

Appellee was charged also with the crimes of extortion, blackmail and solicitation of legal business by persons not members of the bar.

Extortion is the unlawful taking by any officer, by color of his office, of any money or thing of value that is not due him, or more than is due him, or before it is due. The evidence in this case showed the exact opposite of the statutory requirement. It showed the appellee received no money for his services. The charge of blackmail must fail also for that reason and, additionally, for the reason that appellee, as an attorney, is a public officer. Blackmail is extortion by a private person rather than a public officer: Commonwealth v. Costello, 16 D. & C. 2d 535 (1958). The charge of solicitation of legal business by persons not a member of the bar also was not established. Appellee is a member of the bar. The prosecution relied on the conspiracy dragnet to breathe vitality into this otherwise lifeless allegation.